1    EDMUND G. BROWN JR.
Attorney General of the State of California
2    DANE R. GILLETTE
Chief Assistant Attorney General
3    GERALD A. ENGLER
Senior Assistant Attorney General
4    PEGGY S. RUFFRA
Supervising Deputy Attorney General
5    JILL M. THAYER, State Bar No. 166428
Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7    Telephone: (415) 703-5954
Fax: (415) 703-1234
8    Email: Jill.Thayer@doj.ca.gov

9    Attorneys for Respondent

10          IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12          SAN FRANCISCO DIVISION

| | |
|---|---|
| **ANDREW S. AUSTIN,** | C 07-5620 MHP (PR) |
| Petitioner, | |
| v. | |
| **RICHARD SUBIA, Warden,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE                                                      1

STATEMENT OF FACTS                                                         2

ARGUMENT                                                                   4

    I.      STANDARD OF REVIEW                                       4

    II.     THE CALIFORNIA COURT OF APPEAL'S DETERMINATION
           THAT THE PROSECUTOR'S QUESTION TO MELISSA
           ABOUT M.'S CREDIBILITY DID NOT CONSTITUTE A
           DENIAL OF DUE PROCESS WAS NOT CONTRARY TO OR AN
           UNREASONABLE APPLICATION OF UNITED STATES
           SUPREME COURT AUTHORITY                                  5

    III.    THE STATE COURT'S DETERMINATION THAT DEFENSE
           COUNSEL DID NOT RENDER INEFFECTIVE ASSISTANCE IN
           FAILING TO REQUEST A MISTRIAL WAS NOT AN
           UNREASONABLE APPLICATION OF SUPREME COURT
           AUTHORITY                                                9

    IV.    THE STATE COURT DID NOT UNREASONABLY APPLY
           SUPREME COURT AUTHORITY IN DETERMINING THAT
           THE TRIAL COURT'S RULING RESTRICTING
           PETITIONER'S CROSS-EXAMINATION OF M. ABOUT BEING
           TOUCHED BY ANOTHER CHILD DID NOT VIOLATE
           PETITIONER'S RIGHTS TO CONFRONTATION AND TO
           PRESENT A DEFENSE                                       10

    V.     THE STATE COURT DETERMINATION THAT SUFFICIENT
           EVIDENCE OF FORCE AND DURESS SUPPORTED THE
           VERDICT WAS NOT AN UNREASONABLE APPLICATION OF
           SUPREME COURT AUTHORITY                                 14

CONCLUSION                                                                20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bragg v. Galaza*
242 F.3d 1082 (9th Cir. 2001) — 5

*Brecht v. Abrahamson*
507 U.S. 619 (1993) — 14

*California v. Trombetta*
467 U.S. 479 (1984) — 11

*Carey v. Musladin*
549 U.S. 70
127 S.Ct. 649 (2006) — 5

*Chambers v. Mississippi*
410 U.S. 284 (1973) — 11

*Coleman v. Thompson*
501 U.S. 722 (1991) — 13

*Darden v. Wainwright*
477 U.S. 168 (1986) — 6, 7

*Davis v. Alaska*
415 U.S. 308 (1974) — 12

*Davis v. Woodford*
384 F.3d 628 (9th Cir. 2004) — 14

*Delaware v. Fensterer*
474 US 15 (1985) — 11

*Delaware v. Van Arsdall*
475 U.S. 673 (1986) — 11

*Donnelly v. DeChristoforo*
416 U.S. 637 (1974) — 7

*Doyle v. Ohio*
426 U.S. 610 (1976) — 7

*Dubria v. Smith*
224 F.3d 995 (9th Cir. 2000) — 7, 8

*Estelle v. McGuire*
502 U.S. 62 (1991) — 6

*Fry v. Pliler*
127 S.Ct. 2321(2007) — 8

**TABLE OF AUTHORITIES  (continued)**

1

2

3                                                                                                      **Page**

*Greer v. Miller*
483 U.S. 756 (1987)                                                                                        7

*Holmes v. South Carolina*
547 U.S. 319 (2006)                                                                                       11

*Jackson v. Virginia*
443 U.S. 307 (1979)                                                                               15, 17, 19

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                                                                             15

*Michigan v. Lucas*
500 U.S. 145 (1991)                                                                                   11, 14

*Ortiz v.  Stewart*
149 F.3d 923 (9th Cir.  1998)                                                                              8

*Ortiz-Sandoval v. Clarke*
323 F.3d 1165 (9th Cir. 2003)                                                                              6

*People v. Cochran*
103 Cal.App.4th 8 (2002)                                                                                  19

*People v. Hecker*
219 Cal.App.3d 1238 (1990)                                                                                19

*People v. Johnson*
26 Cal.3d 557 (1980)                                                                                      15

*People v. Melton*
44 Cal.3d 713 (1988)                                                                                       6

*People v. Senior*
3 Cal.App.4th 765 (1992)                                                                                  19

*Richardson v.  Marsh*
481 U.S. 200 (1987)                                                                                        8

*Schell v. Witek*
218 F.3d 1017 (9th Cir. 2000)                                                                         17, 19

*Smith v.  Phillips*
455 U.S. 209 (1982)                                                                                        7

*Strickland v. Washington*
466 U.S. 668 (1984)                                                                                        9

*Sumner v. Mata*
449 U.S. 539 (1981)                                                                                        5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES  (continued)

**Page**

*United States v. Sanchez-Lima*
161 F.3d 545 (9th Cir. 1998)                                      6

*United States v. Sullivan*
85 F.3d 743 (1st Cir. 1996)                                       6

*Williams v. Rhoades*
354 F.3d 1101 (9th Cir. 2004)                                     5

*Williams v. Taylor*
529 U.S. 362 (2000)                                             4, 5

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                             5, 9

*Wright v. Van Patten*
128 S.Ct. 743 (2008)                                              6

*Yarborough v. Alvarado*
541 U.S. 652 (2004)                                               7

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                 9


**Constitutional Provisions**

United States Constitution
         Sixth Amendment                                          9


**Statutes**

California Evidence Code
         § 353                                                   14
         § 782                                               12, 14

California Penal Code
         § 269                                                 1, 15
         § 269(a)(4)                                             15
         § 288(a)                                              1, 15
         § 288.5(a)                                               1

United States Code, Title 28
         § 2254(d)(1)                                             4
         § 2254(e)(1)                                             5

**Other Authorities**

Antiterrorism and Effective Death Penalty Act of 1996          4, 5

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  JILL M. THAYER, State Bar No. 166428
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5954
     Fax:  (415) 703-1234
8    Email:  Jill.Thayer@doj.ca.gov

9  Attorneys for Respondent

10             IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14 | **ANDREW S. AUSTIN,** | C 07-5620 MHP (PR) |

   Petitioner,

15                                    **MEMORANDUM OF POINTS
                                      AND AUTHORITIES IN
16      v.                            SUPPORT OF ANSWER**

   **RICHARD SUBIA, Warden,**
17
                                 Respondent.
18

19

20                    **STATEMENT OF THE CASE**

21         On June 28, 2005, a jury found petitioner guilty of aggravated sexual assault of a child

22 under 14 (Cal. Pen. Code, § 269), continuous sexual abuse of a child under 14 (Cal. Pen. Code, §

23 288.5(a)), and child molestation (Cal. Pen. Code, § 288(a)). Ex. 1, Clerk's Transcript ("CT") at 426-

24 428. On August 19, 2005, the trial court sentenced petitioner to 27 years to life. CT 484.

25         On July 27, 2006, the California Court of Appeal affirmed the judgment in an unpublished

26 opinion. Ex. 6. The California Supreme Court denied review on November 15, 2006. Ex. 8.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of the case as follows:

M. was born November 5, 1996 and was eight years old at the time of trial. M.'s grandmother, Valerie,[1] married defendant in 2000, after a long-term relationship. Throughout the relationship, defendant was a father figure to M.'s mother, Melissa, and Melissa's two brothers.

Melissa and M. lived with defendant and Valerie from M.'s birth through 2001. M. had a "good" and "loving" relationship with both of them. In 2002, Valerie and defendant moved into a house in Los Gatos, and Melissa and M. rented their own one-bedroom apartment. M. continued to see defendant about once a month at various family gatherings, usually at the Los Gatos house.

On September 26, 2004, M. and Melissa arrived at the Los Gatos house for dinner. After about 10 to 15 minutes, Melissa noticed that M. had left the kitchen, where Melissa and Valerie were talking, and Melissa went to find her. Melissa entered defendant's bedroom (the door was wide open) and she saw M. curl up in a ball on the floor at the end of the bed. M. looked confused and embarrassed. Defendant was folding laundry on the side of his bed, and M. and defendant were fully dressed. Melissa asked if everything was okay, and defendant said they were playing a game in which M. was looking for a piece of candy. Defendant picked up the candy and gave it to M. Melissa thought something was wrong and took M. into the bathroom so they could speak privately.

Melissa asked M. what happened in the room with defendant. M. was embarrassed and said she did not want to tell Melissa. Melissa told her she had to tell, and asked M. whether defendant touched her in her private area (M. understood this to mean vagina). M. said he had, and seemed relieved to have told Melissa. Melissa hugged M. and then had Valerie take M. into another room while she confronted defendant.

Melissa asked defendant if he touched M. in her private area. He asked if Melissa was accusing him of abusing M. She insisted he answer the question, and he responded, "Indirectly, yes." Again she asked him to answer the question, and he said "yes." Defendant seemed shamed and embarrassed and sighed deeply. Melissa left the room, but defendant followed saying he had a right to explain himself. He said he was on the bed and had his arms around M. and his hand went in front of her, but it was not anything more than that. M. told her mother that defendant was lying. Melissa and M. left the house.

Melissa and M. went to a friend's house and Valerie met them there. Melissa spoke to defendant on the telephone. Defendant said he knew what he did was wrong and agreed he needed help. Defendant seemed scared, and Melissa was afraid he might hurt himself.

Valerie telephoned her son, Michael, and told him defendant was suicidal and looking for ammunition for his gun. Michael also spoke to defendant on

---

1. We refer to some of the witnesses by their first names, not out of disrespect, but to avoid confusion and protect the victim's privacy

the telephone. Michael was primarily concerned with defendant's welfare and did not question defendant directly about the allegations. Defendant told Michael that he had messed up and should have known better. He said he did not want to go to prison and if he did and lost his job, then his life would be over.

Officer Jonathan Atkinson obtained a formal statement from Michael that night, which included comments Michael said defendant made earlier in the evening. According to the statement, defendant said "I did it, I got caught," and told Michael that he could not believe he "fucked up" like this. He said that he should have known better, that "she knows things and was asking for it" and that "it wasn't like she said no[.]" A detective interviewed Michael two days after the incident and Michael reported many of the same or similar statements, including that defendant said he "did it" and that "she didn't put up any resistance." At trial, Michael denied that defendant ever said "I did it, I got caught[,]" "I molested M.[,]" or that M. did not resist.

After speaking with defendant, and fearing he might hurt himself, Melissa and Michael called the police to handle the situation. Police responded to the welfare check on defendant and found an unloaded rifle in the living room and a loaded shotgun in the backyard.

The next morning, Melissa took M. to a medical center for an examination. The physician's assistant who examined M. found "no evidence of penetrating, no genitalia trauma." She testified that this did not rule out the possibility of the alleged sexual conduct.

Detective Glen Young interviewed M. two days after the incident. The interview was recorded on DVD and played for the jury. M. said that two days earlier defendant touched her private parts, over and under her clothes, with his hands. She also said defendant lowered her shorts and underpants and kissed her vagina. M. explained that when defendant kissed her vagina she was "laying halfway on the bed" with her feet touching the ground, and he put his hands on her and on the bed. M. told Detective Young that defendant started touching her when she was six, usually at the Los Gatos house, but once at her apartment. M. said defendant touched her more than five times.

On the stand at trial, M. would not say out loud what happened in defendant's bedroom on September 26, but wrote on a piece of paper, "He touched me in my private area." M. said she was on the bed and defendant kneeled at the end of the bed with his hands on the bed. Defendant touched M.'s "boobies," private area, and foot with his tongue, and touched her private area with his hand. M. said defendant touched her both over and under her clothes.

M. did not want defendant to touch her in those places. She said she wanted to get away, but did not try. She was afraid she would get into trouble if she said no to defendant, but she is not sure why she thought she would. M. walked into the bedroom willingly and was not afraid of defendant when she was in the room with him, but she was afraid of her mother. Neither she nor defendant said anything during the touching, and he never asked her to keep it a secret. Defendant never took his clothes off, never showed her any part of his body that he should not, and never made her touch him. M. also said her mother gets mad a lot and sometimes spanks her, and she was afraid Melissa would find out about the touching.

1   A portion of M.'s preliminary hearing testimony was read to the jury and
was largely consistent with her trial testimony. M. clarified that she did not
2 think defendant was doing anything to prevent her from getting away. She was,
however, "a little bit" afraid of getting into trouble. She said defendant told her
3 she would "get in trouble," but she thought she would get into trouble with her
mother, not defendant.

4

   M. also testified at trial that this was not the first time defendant had
5 touched her. She said that he had done "the same kind of thing" once at her
apartment and that he touched her almost every time she saw him at the Los
6 Gatos house. During the preliminary hearing, she explained that defendant
generally pulled her shirt up to touch her chest and pulled her pants down and
7 touched her private area with his tongue.

8   Defendant testified on his own behalf and denied molesting M. He said
that on September 26 he was bringing laundry from the dryer into his room
9 when he saw M. in the bedroom. He recalled that he had a piece of candy on
his nightstand and told M. she could have it, if she could find it. She started to
10 walk toward the candy, and defendant reached out to stop her, fearing the game
would end too quickly. Defendant grabbed M. from behind with one arm on her
11 chest area and one between her legs. He did not intend to touch those areas, and
released her quickly because he felt awkward. M. seemed uncomfortable so he
12 asked her about her summer and an upcoming ballet recital. She said that the
ballet would be Cinderella and defendant told her he knew the story. Defendant
13 got down on one knee, pretended to put a glass slipper on her foot, and kissed
her foot. M. giggled. Defendant returned to his laundry and Melissa entered the
14 room. He was distraught and confused by Melissa's accusations.

15   Both Melissa and Michael described defendant as kind, gentle, loving and
an important part of their family. Defendant's mother, father, sister, and stepson
16 (Melissa's older brother) testified that defendant is a kind, honest person, and
not the type of person who would ever molest a child.

17

Ex. 6 at 2-6, footnote in original.

18

## ARGUMENT

19

### I.

20

### STANDARD OF REVIEW

21

22   Federal habeas corpus review of a state judgment is governed by the Antiterrorism and

23 Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, the federal court has no

24 authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an

25 unreasonable application of, clearly established Federal law," as determined by the United States

26 Supreme Court. 28 U.S.C. § 2254(d)(1). The phrase "clearly established Federal law" "refers to the

27 holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant

28 state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court's decision is

1 "contrary to" law if the state court arrives at a conclusion opposite to that reached by the Supreme

2 Court on a question of law, or reaches a different conclusion based on facts materially

3 indistinguishable from a Supreme Court case. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state

4 court's decision constitutes an "unreasonable application" of Supreme Court precedent if the state

5 court identifies the correct governing legal principles, but the application of law to the facts is not

6 merely erroneous but objectively unreasonable. *Id.* at 411-13. The AEDPA imposes a "highly

7 deferential" standard for evaluating state court rulings and "demands that state court decisions be

8 given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). In

9 conducting habeas review, federal courts presume "that state courts know and follow the law." *Id.*

10 State court findings of historical fact are presumed correct, unless rebutted by clear and

11 convincing evidence. 28 U.S.C. § 2254(e)(1); *see Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)

12 (presumption of correctness applies to express and implied findings of fact by both trial and appellate

13 courts); *Williams v. Rhoades*, 354 F.3d 1101, 1108 (9th Cir. 2004) ("On habeas review, state

14 appellate court findings — including those that interpret unclear or ambiguous trial court rulings —

15 are entitled to the same presumption of correctness that we afford trial court findings."); *Bragg v.*

16 *Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001), amended by 253 F.3d 1150 (state trial and appellate

17 court factual findings presumed correct).

18

19 **II.**

20 **THE CALIFORNIA COURT OF APPEAL'S DETERMINATION THAT THE PROSECUTOR'S QUESTION TO MELISSA ABOUT M.'S CREDIBILITY DID NOT CONSTITUTE A DENIAL OF DUE PROCESS WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF UNITED STATES SUPREME COURT AUTHORITY**

21

22

23 Petitioner contends the prosecutor's question to Melissa about M.'s credibility denied him

24 a fair trial. Pet. at 29-36. The state court's determination was not contrary to or an unreasonable

25 application of federal law as established by the Supreme Court.

26 In the absence of a Supreme Court holding on an issue, the state court's determination

27 cannot be contrary to or an unreasonable application of Supreme Court authority. *Carey v.*

28 *Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654 (2006). Thus, where the Supreme Court never addressed

1   a claim that private-actor courtroom conduct was so inherently prejudicial that it deprived a

2   defendant of a fair trial, the state court's decision was not contrary to or an unreasonable application

3   of clearly established federal law. *Id.* at 653-54. Likewise, where no decision of the Supreme Court

4   considered whether defense counsel's appearance by speaker phone constituted a complete denial

5   of counsel, the state court's decision cannot be considered contrary to or an unreasonable application

6   of Supreme Court authority. *Wright v. Van Patten*, 128 S.Ct. 743, 746-47 (2008).

7        In the present case, the prosecutor asked Melissa whether M. "was the type of child that

8   would lie about the defendant molesting her." Ex. 2, Reporter's Transcript ("RT") at 62. Melissa

9   answered, "no," and defense counsel objected on the ground of speculation. The court sustained the

10  objection. On defense counsel's request, the trial court ordered that "the answer will be stricken and

11  ignored by the jury." RT at 62.

12       The United States Supreme Court has never addressed whether a prosecutor's question to

13  a witness regarding the credibility of another witness violates federal law. Respondent has diligently

14  searched and found no Supreme Court authority holding that such a question violates federal law.

15  Although the California Court of Appeal concluded that such a question violates California law

16  under *People v. Melton*, 44 Cal.3d 713 (1988), ex. 6 at 6, federal habeas relief is not available for

17  state law error. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). While some federal circuit courts

18  have determined such questions are improper, *see United States v. Sanchez-Lima*, 161 F.3d 545,

19  548 (9th Cir. 1998), *United States v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996), "a state court

20  decision may not be overturned simply because of a conflict with circuit law." *Ortiz-Sandoval v.*

21  *Clarke*, 323 F.3d 1165, 1172 (9th Cir. 2003). Moreover, the federal cases arose on direct appeal,

22  where the courts exercise supervisory powers over the trial courts and prosecutors. On habeas,

23  the appropriate standard is the narrow one of due process, not the broad exercise of supervisory

24  power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The court in *Sullivan*, 85 F.3d at 750,

25  noted any prosecutorial error did not implicate a constitutional right. Since the Supreme Court

26  has never held that it is prosecutorial misconduct to question a witness about the credibility of

27  another witness, let alone considered whether such conduct violates due process, the state court

28  decision cannot be considered contrary to or an unreasonable application of Supreme Court

1   authority.

2       Petitioner is not entitled to habeas relief even under Supreme Court authority

3   pertaining to other forms of prosecutorial misconduct.  The United State Supreme Court has held

4   that a prosecutor's improper comments during closing argument may violate a defendant's due

5   process right only if the argument "'so infected the trial with unfairness as to make the resulting

6   conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. at 181, quoting *Donnelly*

7   *v. DeChristoforo*, 416 U.S. 637, 643 (1974).  "[T]he touchstone of due process analysis in cases

8   of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

9   prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (prosecutor's failure to disclose juror's

10  application for employment with District Attorney's Office).  The federal habeas court must

11  distinguish between ordinary trial error of a prosecutor and that sort of egregious misconduct . . .

12  amount[ing] to a denial of constitutional  due process."  *Donnelly v.  DeChristoforo*, 416 U.S. at

13  647-48.  Since overall fairness sets a general standard, the state court must be given great leeway

14  in applying it.  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule,

15  the more leeway courts have in reaching outcomes in case-by-case determinations.").

16      In *Greer v. Miller*, 483 U.S. 756 (1987), the Supreme Court held that a prosecutor's

17  misconduct in asking the defendant a question in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976)

18  did not constitute a denial of due process.  *Id.* at 765-66.  The Court determined that the sequence

19  of events—the prosecutor's single question, defense counsel's immediate objection which the

20  trial court sustained, and two curative instructions— "clearly indicates that the prosecutor's

21  improper question did not violate [the defendant's] due process rights."  *Id.* at 766.

22      Admitting a police officer's pre-trial interview statements that he did not believe the

23  defendant's answers did not violate due process when the statements gave context to the

24  defendant's answers and did not carry "any special aura of reliability."  *Dubria v. Smith*, 224 F.3d

25  995, 1001-02 (9th Cir. 2000) (en banc).

26      The California Court of Appeal determined the prosecutor's question, and Melissa's

27  response before defense counsel's objection, did not prejudice petitioner, reasoning as follows:

28      Melissa's brief statement was not particularly striking.  One would expect

Memo. of Points and Authorities in Support of Answer- C 07-5620 MHP (PR)

7

1    M.'s mother to believe she is an honest and trustworthy child, and the jury
     was aware Melissa acted upon M.'s allegations. The jurors also had the
2    opportunity to evaluate M.'s credibility themselves, and were instructed that
     they are the sole judges of the "believability of a witness."

3

4  Ex. 6 at 7.

5       The state court also observed that "the jury is presumed to follow instructions to ignore

6  inadmissible statements." Ex. 6 at 7. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

7       The state court's determination that petitioner was not deprived of a fair trial is not

8  contrary to or an unreasonable application of Supreme Court authority. The question did not

9  implicate petitioner's constitutional rights. It was an isolated incident. "Where an allegedly

10 improper question is an isolated or one-time incident, this Court consistently has refused to find a

11 due process violation." *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The jury was

12 already aware Melissa believed M., since she acted on M.'s allegations. *Dubria v. Smith*, 224

13 F.3d at 1001 n.2 (jury already understood police did not believe defendant). Melissa was not a

14 government agent, but M.'s mother, and her assessment of M.'s credibility was not entitled to

15 any special aura of reliability. The trial court immediately sustained defense counsel's objection,

16 and instructed the jury to ignore the answer.

17      Finally, even if federal constitutional error occurred, it did not have a substantial and

18 injurious effect on the jury's verdict. "[I]n § 2254 proceedings a court must assess the prejudicial

19 impact of constitutional error in a state-court criminal trial under the 'substantial and injurious

20 effect' standard set forth in *Brecht* [*v. Abrahamson*], 507 U.S. 619 [1993], whether or not the

21 state appellate court recognized the error and reviewed it for harmlessness under the 'harmless

22 beyond a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18." *Fry v. Pliler*, 127 S.Ct.

23 2321, 2328 (2007). While M.'s credibility was a central issue, petitioner made critical

24 admissions to Melissa and Michael which bolstered M.'s credibility far more than Melissa's

25 opinion. As discussed above, Melissa's statement was not particularly significant, and therefore

26 did not have a substantial and injurious effect on the verdict.

27

28

### III.

**THE STATE COURT'S DETERMINATION THAT DEFENSE COUNSEL DID NOT RENDER INEFFECTIVE ASSISTANCE IN FAILING TO REQUEST A MISTRIAL WAS NOT AN UNREASONABLE APPLICATION OF SUPREME COURT AUTHORITY**

Petitioner contends his attorney rendered ineffective assistance by failing to request a mistrial based on the jury's exposure to the evidence described above. Pet. at 31-33. The state court determination that petitioner did not receive ineffective assistance of counsel was not an unreasonable application of Supreme Court authority.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Tactical decisions are given wide latitude. *Id.* at 689. The defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In federal habeas proceedings, "it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Visciotti*, 537 U.S. at 25. Thus, federal habeas review of a Sixth Amendment claim is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

The state court determined that defense counsel's performance was not incompetent and did not prejudice petitioner, reasoning as follows:

> "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.] Accordingly, it would be a rare case in which the merits of a mistrial motion were so clear that counsel's failure to make the motion would amount to ineffective assistance. Nonetheless, defendant could conceivably prove incompetence if his counsel's omission was shown to be grounded in ignorance or misapplication of the law rather than tactical considerations [citations] and if the motion for mistrial bore strong potential for success." (*People v. Haskett* (1982) 30 Cal.3d 841, 854-855.)

1      We find no evidence in the record that defense counsel misunderstood or
misapplied the law. Counsel objected promptly to the prosecutor's question and

2      requested that the testimony be stricken. A reasonable assumption, and there is
no evidence to the contrary, is that counsel also was aware of the option of

3      moving for a mistrial. He may have reasonably believed, however, that a
mistrial motion was not in defendant's best interests. Counsel may have thought

4      that the chance of a successful motion was minimal and wanted to avoid
antagonizing the judge and jury. Alternatively, counsel may have thought the

5      trial was proceeding well and that defendant would not benefit from a new trial.

6      We also conclude that it is unlikely the trial court would have granted a
mistrial motion. Melissa's brief statement was not particularly striking. One

7      would expect M.'s mother to believe she is an honest and trustworthy child, and
the jury was aware Melissa acted upon M.'s allegations. The jurors also had the

8      opportunity to evaluate M.'s credibility themselves, and were instructed that
they are the sole judges of the "believability of a witness." Additionally, the trial

9      court's instruction to disregard the statement was clear, and was supplemented
with the general instruction that the jury must not consider any evidence

10     "stricken by the court." As the jury is presumed to follow instructions to ignore
inadmissible statements (see, e.g., *People v. Bryden* (1998) 63 Cal.App.4th 159,

11     184), it was reasonable for the trial court to conclude that its admonition and
instructions were sufficient to cure any prejudice (see *People v. Harris* (1994)

12     22 Cal.App.4th 1575, 1581 ["whether the error can be cured by striking the
testimony and admonishing the jury rests in the sound discretion of the trial

13     court"] ).

14   Ex. 6 at 6-7.

15        The state court's analysis is not unreasonable. Petitioner does not claim his attorney was

16   unaware of the option to request a mistrial. Defense counsel likely reasonably concluded that the

17   trial court's prompt order to strike the response and instruction that the jury ignore the response was

18   sufficient to correct any error. He likely reasonably assessed his chances of success on a mistrial

19   motion as minimal and refrained from making a futile gesture. Moreover, as discussed above, since

20   the question and response were not unduly prejudicial, there is no reasonable probability the trial

21   court would have granted a mistrial motion. Accordingly, petitioner is not entitled to habeas relief.

22                                    **IV.**

23   **THE STATE COURT DID NOT UNREASONABLY APPLY SUPREME**
     **COURT AUTHORITY IN DETERMINING THAT THE TRIAL**

24   **COURT'S RULING RESTRICTING PETITIONER'S CROSS-**
     **EXAMINATION OF M. ABOUT BEING TOUCHED BY ANOTHER**

25   **CHILD DID NOT VIOLATE PETITIONER'S RIGHTS TO**
     **CONFRONTATION AND TO PRESENT A DEFENSE**

26

27        Petitioner contends the trial court's refusal to allow cross-examination of M. about being

28   touched by another child violated his rights to present a defense and to confrontation. Pet. at 37-45.

Memo. of Points and Authorities in Support of Answer- C 07-5620 MHP (PR)

1 | The state court's ruling was not an unreasonable application of Supreme Court authority.

2       The due process clause requires "that criminal defendants be afforded a meaningful

3 opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984);

4 *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The right to introduce relevant evidence is not

5 unlimited, but may bow to accommodate other legitimate interests in the criminal trial process.

6 *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006); *Michigan v. Lucas*, 500 U.S. 145, 149

7 (1991). In *Chambers*, the Supreme Court found a due process violation because the excluded

8 evidence had "persuasive assurances of trustworthiness" and was "critical" to the defense.

9 *Chambers*, 410 U.S. at 302. Excluding defense evidence regarding a victim's prior sexual history

10 for failure to comply with statutory notice and hearing requirements does not necessarily violate a

11 defendant's right to present a defense. *Lucas*, 500 U.S. at 153.

12       "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in

13 a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*,

14 475 U.S. 673, 678 (1986). The Confrontation Clause does not prevent "a trial judge from imposing

15 any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the

16 contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose

17 reasonable limits on such cross-examination based on concerns about, among other things,

18 harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive

19 or only marginally relevant." *Id.* at 679. "'[T]he Confrontation Clause guarantees an *opportunity*

20 for effective cross-examination, not cross-examination that is effective in whatever way, and to

21 whatever extent, the defense might wish.'" *Id.*, quoting *Delaware v. Fensterer*, 474 US 15, 20

22 (1985) (per curiam) (emphasis in original).

23       In *Van Arsdall*, the trial court prohibited the defendant from all inquiry into the possibility

24 that a key prosecution witness would be biased as a result of the dismissal of a pending public

25 drunkenness charge. A violation of the Confrontation Clause is stated "by showing that [the

26 defendant] was prohibited from engaging in otherwise appropriate cross-examination designed to

27 show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the

28 facts from which jurors . . . could appropriately draw inferences relating to the reliability of the

1   witness.'" *Id.* at 680, quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974). "A reasonable jury might

2   have received a significantly different impression of [the witness's] credibility had [the defendant's]

3   counsel been permitted to pursue his proposed line of cross-examination." *Id.*

4           The state court summarized the factual background of petitioner's claim as follows:

5           Defendant next contends the court erred in refusing to allow defense
        counsel to question M. about an incident of sexual conduct involving her friend,
6       A. Melissa testified that when M. was seven she said A., who is a year older
        than M., "touched her in her private part." "[M.] and [A.] were playing in the
7       room, and I had [M.] come out, and she had told me that [A.] had touched her,
        and so, I told [A.'s mom], and then we talked to our girls, and I think, it was just
8       an innocent type . . . ." Melissa later noted that the girls "touched each other in
        their private-in their vagina[,]" and that after the incident, the girls were not
9       allowed to be alone in a room together. During M.'s testimony, defense counsel
        asked: "[M.], has your friend, [A.], ever touched you?" The prosecution
10      objected as M. answered, "I don't know." The court conferred with both
        counsel in a sidebar and sustained the objection.

11
        The next court day, defense counsel placed his argument for admissibility
12      on the record. He stated that he was trying to determine "whether a friend, or
        other people outside of her mother have influenced [M.] or educated her, so to
13      speak, on sexual matters, and I felt that was relevant given the fact that her age
        of 8 years old, and at the time of the incident 7 years old." He further stated: "I
14      think, that's relevant to understand and know how sophisticated she is in terms
        of sexual acts as well as what people may do with parts of their body . . . and I
15      think that the exposure to that type of conduct, whether it's through a friend or
        otherwise, would be relevant." The prosecutor noted her objection on relevance
16      and hearsay grounds. The court stated that it had indicated off the record that
        it "would sustain the objection, but permit the defense to explore where [M.]
17      learned the terminology such as vagina, 'boobie', things of that nature . . . ." The
        trial court did not state its grounds for sustaining the objection.

18

19  Ex. 6. at 8-9.

20          The state court first decided that petitioner was precluded from complaining of error in the

21  trial court's exclusion of the evidence because he failed to file a motion to introduce the evidence

22  pursuant to California Evidence Code section 782. Ex. 6 at 9-12. The state court next determined

23  that defense counsel's failure to file the motion did not constitute ineffective assistance because it

24  was not prejudicial, reasoning as follows:

25          Although the incident with A. is relevant to M.'s knowledge of sexual
        behavior, we find that defense counsel's inability to question M. directly on the
26      issue is of little importance. The jury was fully apprised of the incident through
        Melissa's testimony and the videotape of M.'s interview with Detective Young.
27      Our review of M.'s trial testimony leads us to believe it is unlikely defense
        counsel would have elicited any more detail in direct questioning of M. than
28      was presented by the alternative sources. M.'s description of the sexual conduct

1    involving defendant, for example, was as detailed in the videotape as it was at
     trial, and she appears to have been even more forthcoming in some areas in the
2    interview setting. M., in fact, volunteered the information regarding A. during
     the interview, but when asked directly about the incident at trial, she responded
3    with "I don't know." It is unlikely that a largely repetitive cross-examination
     on a topic tangentially related to M.'s credibility would have had any influence
4    on the jury's decision. Defense counsel's failure to follow [California Evidence
     Code] section 782 procedures, in other words, was not prejudicial.

5

6    Ex. 6 at 12.

7         The state court then determined that the trial court's ruling did not deprive petitioner of

8    his rights to present a defense and confront witnesses:

9         Nevertheless, defendant argues that the refusal to allow this line of
          questioning denied him his constitutional Sixth and Fourteenth Amendment
10        rights to present a defense and to confrontation. These arguments were not
          raised below. Even if we assume the issues are properly before us on appeal,
11        we conclude defendant's arguments are without merit.

12        "Although the complete exclusion of evidence intended to establish an
          accused's defense may impair his or her right to due process of law, the
13        exclusion of defense evidence on a minor or subsidiary point does not interfere
          with that constitutional right." (*People v. Cunningham* (2001) 25 Cal.4th 926,
14        999.) "A trial court's limitation on cross-examination pertaining to the
          credibility of a witness does not violate the confrontation clause unless a
15        reasonable jury might have received a significantly different impression of the
          witness's credibility had the excluded cross-examination been permitted.
16        [Citations.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.)

17        We agree that M.'s credibility was a central issue in this case. We do not
          agree, however, that cross-examination of M. on this particular topic would
18        have had a significant impact on defendant's defense or the jury's impression
          of M.'s credibility. The jury was exposed to the underlying facts through two
19        other sources, including M.'s own words which drew the very link between
          defendant and A. that defendant wished to stress. It is unlikely that the
20        proposed questioning would have resulted in additional information of
          noticeable benefit to the defense.
21
          We conclude that exclusion of the evidence, and defense counsel's failure
22        to follow [California Evidence Code] section 782 procedures to question M. on
          the topic, were not prejudicial and did not violate defendant's constitutional
23        rights.

24   Ex. 6 at 13.

25        First, this claim is procedurally defaulted. For reasons of comity, the federal courts "will

26   not review a question of federal law decided by a state court if the decision of that court rests on a

27   state law ground that is independent of the federal ground and adequate to support the judgment."

28   *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The Ninth Circuit has held that California's

1  requirement that a party must raise a timely and specific objection, as codified by Cal. Evidence

2  Code § 353, constitutes a valid procedural default. *Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir.

3  2004) (failure to object based on confrontation clause where only evidentiary objection was raised

4  at trial).

5          In addition, the state court ruling was not an unreasonable application of Supreme Court

6  authority. First, the proposed cross-examination was irrelevant, since the incident with A. occurred

7  when M. was seven, and M. testified petitioner began molesting her when she was six. CT 323, RT

8  108. Accordingly, the evidence did not indicate M. learned of sexual matters through A. rather than

9  petitioner. Second, defense counsel did not comply with California Evidence Code section 782.

10  Legitimate state interests support notice requirements for introducing evidence of a victim's prior

11  sexual conduct. *Michigan v. Lucas*, 500 U.S. at 149-50. Finally, as the state court noted, the jury

12  "was fully apprised of the incident through Melissa's testimony and the videotape of M.'s interview

13  with Detective Young." Ex. 6 at 12; CT 336-337; RT 96-97, 109-110. Accordingly, the state

14  court's determination that the trial court's ruling did not deprive petitioner of his rights to present

15  a defense and confrontation was not an unreasonable application of Supreme Court authority.

16          In any event, any constitutional error did not have a substantial and injurious effect on the

17  verdict. *Brecht*, 507 U.S. at 623. Based on its review of M.'s trial testimony and her "I don't know"

18  response to the petitioner's initial question, the state court found it "unlikely defense counsel would

19  have elicited any more detail in direct questioning of M. than was presented by the alternative

20  sources." Ex. 6 at 12. Since the evidence was not relevant, the jury was aware of the incident

21  through Melissa's testimony and M.'s recorded interview, and cross-examination of M. would not

22  have revealed any more detail, any error did not affect the verdict.

23                                               **V.**

24          **THE STATE COURT DETERMINATION THAT SUFFICIENT**
          **EVIDENCE OF FORCE AND DURESS SUPPORTED THE VERDICT**
25          **WAS NOT AN UNREASONABLE APPLICATION OF SUPREME**
          **COURT AUTHORITY**
26

27          Petitioner contends the evidence was insufficient to support the element of force or duress

28  for aggravated sexual assault of a child. Pet. at 46-55. The state court's determination that

1 | substantial evidence supported the jury's finding of force or duress was not an unreasonable

2 | application of Supreme Court authority.

3 | In reviewing a state prisoner's claim of insufficient evidence, a federal court does not

4 | determine whether it believes that the evidence established guilt beyond a reasonable doubt. The

5 | federal court determines only whether, "after viewing the evidence in the light most favorable to the

6 | prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

7 | a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Once

8 | a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the

9 | evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to

10 | be considered in the light most favorable to the prosecution." *Id.* (emphasis in original). Federal

11 | habeas review of a state court ruling on sufficiency of the evidence is performed "with explicit

12 | reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324

13 | n.16.

14 | Sufficiency of evidence review in California expressly follows the *Jackson* standard.

15 | *People v. Johnson*, 26 Cal.3d 557, 575-78 (1980). Accordingly, the applicable standard of review

16 | is whether the decision of the California Court of Appeals reflected an unreasonable application of

17 | *Jackson. Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

18 | Petitioner was convicted, in count one, of violating California Penal Code section 269,

19 | aggravated sexual assault of a child. At the time of petitioner's conviction,[2] California Penal Code

20 | section 269(a)(4) included, "[o]ral copulation, in violation of [California Penal Code] section 288a,

21 | when committed by force, violence, duress, menace or fear of immediate and unlawful bodily injury

22 | on the victim or another person." During closing argument, the prosecution relied on both "force"

23 | and "duress" to prove forcible oral copulation in violation of California Penal Code section 288a.

24 | Ex. 6 at 14; RT 652.

25 | The state court described the meaning of "force" as defined in California, as follows:

26 |

27 | 2. California Penal Code section 269 was amended by Stats. 2006, ch. 337, § 6, effective
September 20, 2006, and Initiative Measure (Prop. 83, § 5), approved November 7, 2006, effective

28 | November 8, 2006.

1    In *People v. Cicero,* the court held that to establish "force" within the
2    meaning of section 288 subdivision (b)(1)—which makes criminal the
     commission of a lewd act on a child under the age of 14 that is accomplished
3    "by use of force, violence, duress, menace, or fear of immediate and unlawful
     bodily injury""—the prosecution must show the defendant "used physical force
4    substantially different from or substantially greater than that necessary to
     accomplish the lewd act itself." (*People v. Cicero* (1984) 157 Cal.App.3d 465,
5    474 ( *Cicero* ).) In *People v. Griffin* (2004) 33 Cal.4th 1015, 1025-1026 the
     California Supreme Court limited the use of this specialized definition of force,
6    finding that it did not apply to the forcible rape statute. The *Griffin* court
     observed that "[t]he element of force in forcible rape does not serve to
7    differentiate between two forms of unlawful sexual contact as it does under
     section 288. When two adults engage in *consensual* sexual intercourse, whether
8    with or without physical force greater than that normally required to accomplish
     an act of sexual intercourse, the forcible rape statute is not implicated. The
9    gravamen of the crime of forcible rape is a sexual penetration *accomplished
     against the victim's will* by means of force, violence, duress, menace, or fear of
10   immediate and unlawful bodily injury. As reflected in the surveyed case law, in
     a forcible rape prosecution the jury determines whether the use of force served
11   to overcome the will of the victim to thwart or resist the attack, *not* whether the
     use of such force physically facilitated sexual penetration or prevented the
12   victim from physically resisting her attacker." (*Griffin, supra,* 33 Cal.4th at p.
     1027.) In short, "'force' plays merely a supporting evidentiary role, as
13   necessary only to insure an act of intercourse has been undertaken against a
     victim's will." (*Id.* at p. 1025, internal citations omitted.)

14   In *People v. Guido* (2005) 125 Cal.App.4th 566, 574-576 (*Guido*), the
15   Third District considered the meaning of force in the context of aggravated
     sexual assault on a child by forcible oral copulation (Pen.Code, § 269, subd.
16   (a)(4), which is at issue here. The court concluded that the reasoning of *Griffin*
     "appl[ies] equally to the crime of forcible oral copulation." (*Guido, supra,* 125
17   Cal.App.4th at p. 576.) "As with forcible rape, the gravamen of the crime of
     forcible oral copulation is a sexual act accomplished against the victim's will
18   by means of force, . . . ." (*Ibid.*) After noting the similarity between the
     language in the forcible oral copulation and forcible rape statutes, the court
19   concluded, "there is no reasoned basis to apply a different concept of the term
     'force' to forcible rape and forcible oral copulation[.]" ( *Ibid.*) "[W]e hold oral
20   copulation by force within the meaning of section 288a, subdivision (c)(2) is
     proven when a jury finds beyond a reasonable doubt that defendant
21   accomplished an act of oral copulation by the use of force sufficient to
     overcome the victim's will." (*Ibid.*)

22   We find no reason to depart from *Guido's* reasoning and conclusion. The
23   question in this case, therefore, is "whether defendant used force to accomplish
     [oral copulation] with [M.] against her will, not whether the force he used
24   overcame [M.'s] physical strength or ability to resist him." (See *Griffin, supra,*
     33 Cal.4th at p. 1028.)

25   Ex. 6 at 16.

26   The state court determined the evidence was sufficient to establish force under California

27   law, reasoning as follows:

28   During the September 26 incident, defendant, who outweighed M. by over

110 pounds, pulled down M.'s shorts and underpants. M. lie halfway on the bed and defendant kneeled in front of her with his hands on her and on the bed to orally copulate her. M. testified repeatedly that she did not want defendant to touch her and that she wanted to get away. Although she was equivocal regarding whether she tried to get away and could not, or just thought that she could not, her actual resistance is irrelevant in view of the clear testimony that the acts were taken against her will. Even without evidence that defendant touched M. harshly or used physical pressure to induce her acquiescence, a jury could reasonably conclude that defendant's superior size, the general positioning of the act (i.e., blocking M. against the bed with his hands and body), and M.'s adamant refusal that she welcomed the touching combined to constitute the use of force against M.'s will.

Defendant argues that by pulling down M.'s clothes and placing his hands on and around M., he was simply "committing the sexual offenses at issue." However, as the *Griffin* court observed, there are no limits on the type of conduct that can constitute force, and even conduct normally attendant the sexual act can support a forcible conviction if "engaged in with force sufficient to overcome the victim's will[.]" (*Griffin, supra,* 33 Cal.4th at p. 1027.) Little physical force is needed to overcome the will of a vulnerable seven-year-old girl. In *Griffin,* the court found sufficient evidence of force based on the fact that the defendant held the 16-year-old victim's arms against the floor while he accomplished the sex act, and the fact that the sex act was accomplished against the victim's will. (*Griffin, supra,* 33 Cal.4th at p. 1029.) In this case, in which the victim is several years younger even than the victim in *Griffin,* we believe the evidence is similarly sufficient.

Ex. 6 at 16-17.

In light of the entire record, the California Court of Appeal's conclusion that sufficient evidence supported a finding of force was not objectively unreasonable. At the time of the oral copulation, M. was seven years old, weighed 45 to 48 pounds, and was about four feet tall. RT 26. Petitioner was in his 50's, weighed about 160-170 pounds, and was about five feet, nine inches tall. RT 23, 26-27. M. told Detective Young that she tried to get away but could not. CT 342. Although M.'s testimony at the preliminary hearing, RT 424, and at trial, RT 326, was more equivocal about whether she tried to get away, a reviewing court must presume that the trier of fact resolved any conflicting inferences in favor of the prosecution and must defer to that resolution. *Schell v. Witek,* 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc). Evidence that petitioner pulled down M.'s shorts and underpants, trapped her against the bed by kneeling in front of her, and orally copulated her while touching her with both hands, and that M. did not want petitioner to touch her and tried to get away, proved petitioner accomplished the act of oral copulation by the use of force against M.'s will. Accordingly, the state court did not unreasonably apply *Jackson* in concluding that substantial

1  evidence supported petitioner's conviction for aggravated sexual assault of a child.

2        The state court also determined that the evidence was sufficient to establish duress,

3  reasoning as follows:

4        Duress is defined as a "direct or implied threat of force, violence, danger,
    hardship or retribution sufficient to coerce a reasonable person of ordinary
5    susceptibilities to (1) perform an act which otherwise would not have been
    performed or, (2) acquiesce in an act to which one otherwise would not have
6    submitted." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*).)
    "[D]uress involves psychological coercion. Duress can arise from various
7    circumstances, including the relationship between the defendant and the victim
    and their relative ages and sizes . . . . Where the defendant is a family member
8    and the victim is young, . . . the position of dominance and authority of the
    defendant and his continuous exploitation of the victim [are] relevant to the
9    existence of duress." (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319-
    1320 (*Espinoza*), internal quotations omitted.) However, as this court made
10   clear in *Espinoza,* duress can be established only if "there is evidence that the
    victim['s] participation was impelled, at least partly, by an implied threat." (*Id.*
11   at p. 1321, internal quotations omitted.)

12        Here, the prosecutor argued that the duress element was met by defendant
    telling M. she would get into trouble if she did not comply, M.'s awareness that
13   defendant wanted the touching kept a secret, M.'s fear of getting into trouble
    with her mother, defendant's position as a grandfather figure, and the
14   differences in their sizes and ages. We agree with defendant that M. did not
    state specifically that she thought defendant wanted the molestation kept a
15   secret, and that she did testify that *he did not* tell her to keep it a secret. We also
    recognize that M. entered defendant's room willingly and said she was not
16   afraid of defendant at the time of the incident. Even with these corrected facts,
    however, there is sufficient evidence of duress.

17

18        At the end of her preliminary hearing testimony, M. agreed that she
    thought "something bad would happen" if she told of the molestations, but said
19   she did not know why she thought that she would get into trouble. Earlier,
    however, M. testified that she was afraid of getting into trouble, and that
20   *defendant told her* she would get into trouble with her mother. Although this
    portion of the record does not clarify whether M. was afraid she would get into
21   trouble if she did not obey defendant or if her mother found out, both are
    reasonable conclusions under the circumstances. Defendant was M.'s step-
22   grandfather, a much larger and much older authority figure. M. had known
    defendant all her life, had lived with him for years, and was taught to obey him.
23   Additionally, we disagree with the footnoted assertion in *People v. Hecker*
    (1990) 219 Cal.App.3d 1238, 1251, fn. 7, that a threat to a victim not to disclose
24   the molestation cannot support a finding of duress. As this court observed in an
    earlier case, young victims of child molestation are unlikely to perceive the
25   subtle distinction "between warnings enjoining nondisclosure and
    noncompliance": "A simple warning to a child not to report a molestation
26   reasonably implies the child should not otherwise protest or resist the sexual
    imposition." (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.)

27        M.'s confusing and sometimes contradictory testimony on this topic does
    not alter our analysis. Our role is not to reweigh the evidence or "reassess the
28   credibility of the witnesses," but to view the record in the light most favorable

1   to the judgment. (*People v. Jones, supra,* 51 Cal.3d 294, 314-315.) Viewed in
    this light, the record contains ample evidence of a threat; defendant told M. she
2   would "get in trouble" with her mother, M. was afraid of her mother, and M.
    was afraid of getting into trouble when she acquiesced to defendant's oral
3   copulation on September 26.

4   Ex. 6 at 17-19.

5          The state court concluded that "the totality of the circumstances, including defendant's

6   statement to M. that she would get into trouble, M.'s fear of getting into trouble, M.'s reluctance to

7   participate in the acts, the relative differences in age and size between M. and the defendant,

8   defendant's status in the family, and the fact that defendant molested M. virtually every time she

9   visited her grandmother's house, beginning when she was six years old, support a finding of duress."

10  Ex. 6 at 20.

11         The state court's conclusion was not unreasonable.   This Court must resolve any

12  conflicting inferences in favor of the judgment. *Schell v. Witek*, 218 F.3d at 1023. M. testified she

13  was afraid because petitioner told her she would get into trouble. RT 430. M. was told to obey

14  petitioner, who was much older and larger, and was in a position of authority. RT 234.   M.

15  consistently said she did not want petitioner to touch her, that she wanted to get away, and that she

16  was afraid of getting into trouble. RT 235, 237, 249, 251, 430, 440. Based on the totality of the

17  circumstances, the state court did not unreasonably apply *Jackson* in concluding that substantial

18  evidence supported petitioner's conviction

19         Petitioner's reliance on a footnote in *Hecker*, 219 Cal.App.3d at 1251 n.7, that a threat not

20  to disclose molestation does not support a finding of duress, is unwarranted. Pet. at 55. The state

21  court rejected the assertion in *Hecker*, ex. 6 at 18, as have other state authorities. *Cochran*, 103

22  Cal.App.4th at 15; *Senior*, 3 Cal.App.4th at 775.

23

24

25

26

27

28

1

## CONCLUSION

2          Accordingly, respondent respectfully requests this Court to deny the petition for writ of

3    habeas corpus.

4          Dated:  May 22, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

7                              DANE R. GILLETTE
                               Chief Assistant Attorney General

8
                               GERALD A. ENGLER
9                              Senior Assistant Attorney General

                               PEGGY S. RUFFRA
10                             Supervising Deputy Attorney General

11

12
                               /s/ Jill M. Thayer
13                             JILL M. THAYER
                               Deputy Attorney General

14                             Attorneys for Respondent

15   40251536.wpd
     SF2008401163
16

17

18

19

20

21

22

23

24

25

26

27

28

Memo. of Points and Authorities in Support of Answer- C 07-5620 MHP (PR)