Andrew S. Austin V-94573
Mule Creek State Prison
P.O. Box 409060, C-13-237
Ione, CA 95640

In Pro Per



FILED
08 JUL 11 PM 4:3_
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


ANDREW S. AUSTIN,                    C 07-5620 MHP (PR)
        Petitioner,

        v.

RICHARD SUBIA, Warden,
        Respondent.
_____/


MEMORANDUM OF ARGUMENT AND AUTHORITIES IS SUPPORT OF TRAVERSE

**ARGUMENT**

CLAIM I:  PROSECUTOR MISCONDUCT.

In Claim I of Petitioner's writ petition Petitioner asserts a claim of Prosecutor Misconduct alleging that the prosecutor in this case willfully solicited inadmissable testimony which rendered the trial of this matter fundamentally unfair in violation of petitioner's right to due process of law under the 14th Amendment of the Constitution of the United States.

In their Answer Respondents attempt to persuade this court that this is not an issue which is properly before it by narrowing the scope of the claim, shifting the focus of the claim, then defending that shift by asserting that the United States Supreme Court has never addressed whether a prosecutor's question to a witness regarding the credibility of another witness violates due process. Well, . . . while that may be technically accurate it certainly is not correct. The claim presented is one of Prosecutor Misconduct. More likely than not there are still countless of manners of misconduct which can be exercised by the prosecution and which render a trial fundamentally unfair yet have not been specifically addressed by the United States Supreme Court, . . . but it is still misconduct and that issue has indeed been addressed by the United States Supreme Court. See: **Darden v. Wainwright** (1986) 477 US 168; **Caldwell v. Mississippi** (1985) 472 US 320; **Smith v. Phillips** (1982) 455 US 209; **Donnelly v. De Christoforo** (1974) 416 US 637. In the instant case the prosecutor's willful misconduct deprived the petitioner

1 | of a fair trial.
2 |     This entire case turns upon the credibility of the alleged
3 | victim in this case, Mikaela, whom was seven years old when
4 | the allegations are to have occurred and eight years old at
5 | the time of the trial of this matter. In their unpublished opio-
6 | ion even the California Court of Appeal, Sixth Appellate District
7 | acknowledged that Mikaela's testimony was "Confusing and some-
8 | times contradictory" in material matters. (See Opinion at page
9 | 18) Knowing this the prosecutor willfully solicited improper
10 | testimony vouching the credibility of the alleged victim. Was
11 | it the accuser or the vouching witness the jury actually believ-
12 | ed? If the vouching testimony was the jury's deciding factor
13 | then the trial was rendered fundamentally unfair by the willful
14 | introduction of improper testimony by the prosecutor in this
15 | case in violation of petitioner's right to a fair trial; i.e,
16 | due process.
17 |     As the Respondent pointed out in their Answer many Courts,
18 | both federal and state, have determined that this type of quest-
19 | ion violates due process. This line of reasoning includes the
20 | Supreme Court of the State of California. See: **People v. Melton**
21 | **(1988) 44 Cal.3d 716.**

1 | **CLAIM IV: SUFFICIENCY OF THE EVIDENCE.**
2 |     Petitioner has alleged there was not sufficient evidence
3 | fo "any rational trier of fact [to] have found the essential
4 | elements of the crime beyond a reasonable doubt." **Jackson v.**
5 | **Virginia (1979) 443 US 307.** In this case the essential elements
6 | are the use of "force' and "duress".
7 |     **A. Force.**
8 |     Pursuant to the standard by which force is established,
9 | as described by Respondent, the prosecutor must show defendant
10 | used "physical force of a degree sufficient to support a finding
11 | that the act of sexual intercourse was against the will of the
12 | [victim]." **(People v. Griffin (1984) 33 Cal.4th 1015, 1024)**
13 | The California Third District Court of Appeal had applied the
14 | **Griffin** reasoning to the forcible oral copulation aspect of
15 | a charge of aggravated sexual assault per Penal Code 269, (See:
16 | **People v. Guido (2005) 125 Cal.App.4th 566, 575-576.**), in determ-
17 | ining whether the acts in question were against the victims
18 | will, the circumstances surrounding those acts must be considered
19 | including the ages and sizes of the defendant and victim.
20 | **(Griffin, supra.** at p. 1022.)  The instant matter is distinguish-
21 | ed from **Griffin** and **Guido** was wrongly decided. In the Griffin
22 | case the victim was a 16 year old young woman who's arms were
23 | pinned to the floor while the defendant in that case forcibly
24 | raped her. The difference in the size and age of the victim
25 | and perpetrator are not elements of the offense of forcible
26 | rape. However, the difference in age and size are inherent
27 | elements of the offense of aggravated sexual assault against

a child in violation of Penal Code Section 269.

In deciding this case the California Court of Appeal cited **People v. Cicero (1984) 157 Cal.App.3d 465** as the root authority on this issue:

> "In **People v. Cicero**, the court held that to establish "force" within the meaning of section 288 subdivision (b)(1) -- which makes criminal the commission of a lewd act on a child under the age of 14 that is accomplished "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury"" -- the prosecution must show the defendant "used physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." See: **Opinion** at **page 15**.

This language clearly requires the use of physical force which must be greater or different than the elements of the offense.

In this case, Petitioner agrees he was larger and older than Mikaela, factors which are inherent in the elements of the charged offense. However, other factors relied upon by the Respondent and the state Court of Appeal to establish force do not withstand analysis. For example, Respondent notes that Mikaela told a police officer she tried to get away but could not and alternatively testified that she did not try to get away although she wanted to. (Ans. at 17) Respondent also urges that Petitioner trapped Mikaela against the bed and orally copulated her. (Ans. at 17.)

In terms of getting away, notably Mikaela did not testify that Petitioner prevented her from leaving. Respondent's assertion that Petitioner trapped Mikaela against the bed

4.

1 is mere speculation, not evidence, and is not supported by
2 any evidence in the record. As set forth in the body of the
3 writ petition Mikaela's trial testimony was that she did not
4 know where Petitioner's hands were during the alleged oral
5 copulation and he did not restrain her. (RT 5 231-232) Her
6 testimony at the Preliminary Hearing was that when Petitioner
7 touched her with his tongue, she was lying on the bed, while
8 he knelt on the floor, touching her breast and vagina with
9 his hands. (RT 4 425-426.) This constellation of facts does
10 not constitute being trapped. In Sum there is insufficient
11 evidence to establish the use of "force" in this case and
12 determinations to the contrary are unreasonable.

**B. Duress.**

The state court's determination that the evidence was sufficient to establish duress states as follows:

> Duress is defined as a "direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in and act to which one otherwise would not have submitted." (People v. Cochran, (2002) 103 Cal.App.4th 8, 15 (Cochran).) "[D]uress involves psychological coercion. Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and size . . . Where the defendant is a family member and the victim is young . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim [are] relevant to the existence of duress." (People v. Espinoza (2002) 95 Cal.App.4th 1287, 1319-1320 (Espinoza), internal quotations omitted.) However, as this court made clear in Espinoza, duress can be established only if "there is evidence that the victim['s] participation was impelled, at least partly, by an implied threat." (Id, at p. 1321, internal

quotations omitted.)

Here, the prosecutor argued that the duress element was met by defendant telling M. she would get into trouble if she did not comply, M.'s awareness that defendant wanted the touching kept a secret, M.'s fear of getting into trouble with her mother, defendant's position as a grandfather figure, and the differences in their sizes and ages. We agree with the defendant that M. did not state specifically that she thought defendant wanted the molestation kept a secret, and that she did testify that **he did not** tell her to keep it a secret, We also recognize that M. entered defendant's room willingly and said she was not afraid of defendant at the time of the incident. Even with these corrected facts, however, there is sufficient evidence of duress.

At the end of her preliminary hearing testimony, M. agreed that she thought "something bad would happen" if she told of the molestations, but said she did not know why she thought that she would get into trouble. Earlier, however, M. testified that she was afraid of getting into trouble, and that **defendant told her** she would get into trouble with her mother. Although this portion of the record does not clarify whether ,. was afraid she would get into trouble if she did not obey defendant or if her mother found out, both are reasonable conclusions under the circumstances. Defendant was M.'s step-grandfather, a much larger and much older authority figure. M. had known defendant all her life, had lived with him for years, and was taught to obey him. Additionally, we disagree with the footnoted assertion in **People v. Hecker (1990) 219 Cal.App.3d 1238, 1251, fn. 7,** that a threat to a victim not to disclose the molestation cannot support a finding of duress. As this court observed in an earlier case, young victims of child molestation are unlikely to perceive the subtle distinction "between warnings enjoining nondisclosure and noncompliance": "A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (**People v. Senior (1992) 3 Cal.App.4th 765, 775**)

M.'s confusing and sometimes contradictory testimony on this topic does not alter our analysis. Our role is not to reweigh the evidence or "reassess the credibility of the witnesses," but to view the record in the light most favorable to the judgment.(**People v. Jones. supra. 51 Cal.3d 294, 314-315.**) Viewed in this light, the record contains ample evidence of

1     a threat; defendant told M. she would "get in trouble" with her mother, M. was afraid of her mother, and
2     M. was afraid of getting into trouble when she acquiesced to defendant's oral copulation on September
3     26. (**Opinion at 17-19.**)

4   Petitioner concedes he has the burden of establishing that
5 no reasonable factfinder could have found the element of duress
6 present in this case based upon the totality of the circumstances
7 of the evidence presented in this case. That's easy . . . there
8 was no evidence of duress. The state Court of Appeal's conclusion
9 is based on mere supposition and inference to arrive at a con-
10 clusion which is objectively unreasonable in light of the record
11 of this case. The State court relied solely one statement made
12 by Mikaela at the Preliminary Examination of this matter that
13 Petitioner (Andy) told her she would "get into trouble" to
14 support a finding of duress. This court is asked to examine
15 the circumstances of this statement:

16     When Mikaela personally testified at trial she was uneq-
17 uivocal that Petitioner was not the one who told her she would
18 get in trouble with her mother if her mother found out and that
19 he never told her to keep it a secret. (RT 3 279-280) She
20 admitted that no one told her she would get into trouble.
21 (RT 3 235.) It wasn't until Mikaela failed to give evidence
22 of the element of duress that the prosecutor brought in Annamarie
23 Fitzgerald to read portions of Mikaela's Preliminary Examination
24 testimony to the jury. The pertinent portions of that testimony
25 follows:

26     Q. And every time that he touched you, did you want him to touch you?
27

```
 1      A.  I don't know.
 2      Q.  And did you try to get away those other times?
 3      A.  No.
 4      Q.  No?
 5      A.  (Witness shakes head)
 6      Q.  Were you afraid?
 7      A.  A little bit.
 8      Q.  What were you afraid of?
 9      A.  (Long pause in the record)
10      Q.  Were you afraid of getting into trouble?
11      A.  Yeah.
12      Q.  Who said you would get in Trouble?
13      A.  Andy.
14      Q.  Why did you think you would get in trouble?
15      A.  I don't know.
16      Q.  Did you think you would get in Trouble with Andy
            or with your mom or with Mimi?
17          Which one?
18      A.  With Mommy.
19      Q.  With Mommy?
20      A.  Witness nods her head)
21      (RT 4 430:9 - 431:3)
22
23      And the totality of the circumstances of this statement
24 must be considered. This statement was made during a preliminary
25 examination where trial rules do not apply. Hearsay and leading
26 questions are allowed. Prior to rendering the one word response
27 ("Andy") to a leading question the prosecutor was having
```

8.

1    difficulty getting Mikaela to respond to her questioning so
2    the prosecutor approached the bench which resulted in a 15 minute
3    break in the proceedings. Fifteen minutes during which the pros-
4    ecutor took Mikaela and her family into another room and spoke
5    with them. Mikaela's mother, whom Mikaela had already indicated
6    she was afraid of and wanted to please. Mikaela returned to
7    the witness stand with a coloring book. (See: Prelininary Exam-
8    ination Transcript at page 17.)

9        Mikaela was being asked pointed leading questions by an
10   assertive female prosecuor. It is no more presumptive or spec-
11   ulative that Mikaela may have wanted to provide this surrogate
12   mother-figure with answers more intent of pleasing rather than
13   being accurate, particularly in light of the events described
14   above, than the state court's speculation based conclusions.

15       Even viewed in a light most favorable to judgment there
16   is not sufficient evidence to establish the element of duress
17   in this case and the state courts conclusions to the contrary
18   are an unreasonable application of United States Supreme Court
19   authority pursuant to **Jackson v. Virgina (1979) 443 US 307.**

## CONCLUSION

For the reasons set forth above and as prayed for in petitioner's
Petition For Writ Of Habeas Corpus relief must be granted.

Dated: July 9, 2008          Respectfully submitted,

                             *Andrew S Austin*
                             Andrew S. Austin, In Pro Per

9.

Austi,
MCSP BLDG 13-237L
PO BOX 409060
IONE, CA. 95640

LEGAL
MAIL

United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA. 94102




UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

450 GOLDEN GATE AVE.

SAN FRANCISCO, CA. 94102

mr/F.G   7/9/08   8:25 pm