UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW S. AUSTIN,

    Petitioner,

    v.

RICHARD SUBIA, Warden,

    Respondent.

                                 /

No. C 07-5620 MHP (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254 in which Andrew Austin challenges the constitutional validity of his convictions. For the reasons set forth below, the petition is denied.

## BACKGROUND

On September 26, 2004, Austin sexually molested M., an eight year old girl. After a trial on charges arising from this incident, a Santa Clara Superior Court jury found Austin guilty of one count of aggravated sexual assault of a child under fourteen (Cal. Pen. Code § 269), one count of continuous sexual abuse of a child (id. § 288.5(a)), and one count of child molestation (id. § 288(a)). The trial court sentenced Austin to a total term of twenty-seven years to life in state prison. Austin appealed. The California Court of Appeal for the Sixth Appellate District affirmed the judgment. Ans., Ex. 6 (People v. Austin, No. H029250, 2006 WL 2076846 (Cal. Ct. App. July 27, 2006)) at 1. The California Supreme Court denied his petition for review. Id., Ex. 8. It appears that Austin did not file any state habeas

1  petitions relating to these convictions.

2      The relevant facts are as follows.  M.'s maternal grandmother was married to Austin,

3  who was not a blood-relation of M., at the time of the relevant events.  M. was interviewed

4  by the police two days after the incident:

> The interview was recorded on DVD and played for the jury. M. said that two days earlier [Austin] touched her private parts, over and under her clothes, with his hands. She also said [Austin] lowered her shorts and underpants and kissed her vagina. M. explained that when [Austin] kissed her vagina she was "laying halfway on the bed" with her feet touching the ground, and he put his hands on her and on the bed. M. told Detective Young that [Austin] started touching her when she was six, usually at the Los Gatos house, but once at her apartment. M. said [Austin] touched her more than five times.
>
> On the stand at trial, M. would not say out loud what happened in [Austin's] bedroom on September 26, but wrote on a piece of paper, "He touched me in my private area." M. said she was on the bed and [Austin] kneeled at the end of the bed with his hands on the bed. [Austin] touched M.'s "boobies," private area, and foot with his tongue, and touched her private area with his hand. M. said [Austin] touched her both over and under her clothes.
>
> M. did not want [Austin] to touch her in those places. She said she wanted to get away, but did not try. She was afraid she would get into trouble if she said no to [Austin], but she is not sure why she thought she would. M. walked into the bedroom willingly and was not afraid of [Austin] when she was in the room with him, but she was afraid of her mother. Neither she nor [Austin] said anything during the touching, and he never asked her to keep it a secret [Austin] never took his clothes off, never showed her any part of his body that he should not, and never made her touch him. M. also said her mother gets mad a lot and sometimes spanks her, and she was afraid Melissa would find out about the touching.
>
> A portion of M.'s preliminary hearing testimony was read to the jury and was largely consistent with her trial testimony. M. clarified that she did not think [Austin] was doing anything to prevent her from getting away. She was, however, "a little bit" afraid of getting into trouble. She said [Austin] told her she would "get in trouble," but she thought she would get into trouble with her mother, not [Austin].

(Ans., Ex. 6 at 4–5.)  A police officer obtained a formal statement from M.'s grandmother's son, Michael:

> According to the statement, [Austin] said "I did it, I got caught," and told Michael that he could not believe he "fucked up" like this. He said that he should have known better, that "she knows things and was asking for it" and that "it wasn't like she said no[.]" A detective interviewed Michael two days after the incident and Michael reported many of the same or similar statements, including that defendant said he "did it" and that "she didn't put up any resistance." At trial, Michael denied that [Austin] ever said "I did it, I got caught[,]" "I molested M.[,]" or that M. did not resist.

2

(Id. at 3.)

As grounds for federal habeas relief, Austin alleges that (1) his right to due process was violated when the prosecutor engaged in misconduct by asking a prejudicial question of a witness; (2) his attorney provided ineffective assistance by failing to ask for a mistrial when the jury was exposed to the improper question mentioned in the first claim; (3) his Sixth Amendment confrontation rights were violated when the trial court refused to allow defense counsel to question the victim as to whether her friend had ever touched her to demonstrate a source for her sexual knowledge; and (4) the evidence was insufficient to establish the element of force or duress for the aggravated sexual assault of a child count.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in

1 its independent judgment that the relevant state-court decision applied clearly established
2 federal law erroneously or incorrectly. Rather, that application must also be unreasonable."
3 Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask
4 whether the state court's application of clearly established federal law was "objectively
5 unreasonable." Id. at 409.

## DISCUSSION

### I.  Prosecutorial Misconduct

Austin claims that the prosecutor committed misconduct when he asked M.'s mother, Melissa, whether M. is "the type of child that would lie about [Austin] molesting her." (Ans., Ex. 2 at 62.) When Melissa said, "No," trial counsel objected and the trial court instructed the jury that it ignore Melissa's answer. (Id.) The state appellate court rejected Austin's claim, finding that "Melissa's brief statement was not particularly striking":

> One would expect M.'s mother to believe she is an honest and trustworthy child, and the jury was aware Melissa acted upon M.'s allegations. The jurors also had the opportunity to evaluate M.'s credibility themselves, and were instructed that they are the sole judges of the "believability of a witness." Additionally, the trial court's instruction to disregard the statement was clear, and was supplemented with the general instruction that the jury must not consider any evidence "stricken by the court."

(Ans., Ex. 6 at 7.)

A prosecutorial misconduct claim is decided "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). The first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005).

The first factor in determining the prejudicial effects of misconduct is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and that no due process violation occurred. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987); Darden v. Wainwright, 477

4

U.S. 168 (1986). Other factors which a court may take into account in determining whether prosecutorial misconduct rises to the level of a due process violation are: (1) the weight of evidence of guilt, U.S. v. Young, 470 U.S. 1, 19 ( 1985); (2) whether the misconduct was isolated or part of an ongoing pattern, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); and (3) whether the misconduct relates to a critical part of the case, see Giglio v. United States, 405 U.S. 150, 154 (1972).

Austin's claim is without merit because Austin has not shown that the curative instructions were ineffective or that the question or answer were prejudicial. Curative instructions were issued by the trial court, and, according to the authorities cited above, this court must presume that the jury disregarded the question and answer and that no due process error occurred. Austin has not overcome this presumption. Furthermore, looking at Austin's claim in light of the factors listed above, there was fairly strong evidence of guilt, including Austin's own admissions. Also, the alleged misconduct was isolated — certainly Austin has not pointed to other statements or conduct by the prosecutor that would indicate a pattern of misconduct. As to the final factor, though the alleged misconduct relates to the critical issue of M.'s credibility, this court must presume that the jurors followed their instructions to disregard Melissa's answer. See Richardson v. Marsh, 481 U.S. 200, 206 (1987). Finally, the state appellate court instructed the jury that it — and no one else — was the final arbiter of credibility, and its finding that the statement was not particularly striking was reasonable. On this record, the Court cannot say that the prosecutor's statement so infected the trial that Austin was denied a fair trial as guaranteed by due process. For the foregoing reasons, the court denies Austin's claim.

## II.     Assistance of Counsel

Austin contends that his attorney provided ineffective assistance by failing to ask for a mistrial after the prosecutor posed the question at issue in the previous claim. (Pet. at 31.) The state appellate court rejected this claim, finding it "unlikely the trial court would have granted a mistrial motion" because Melissa's brief statement was "not particularly striking"

and because curative instructions were issued.  (Ans., Ex. 6 at 7.)

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, a Austin must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687–68.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the Austin cannot even establish incompetence under the first prong.  See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

Applying these legal principles to the instant action, the court concludes that Austin's claim is without merit.  Austin's claim of ineffective assistance is based on the premise that the trial court would have granted trial counsel's motion for a mistrial if he had made one.  The record, however, does not support Austin's contention.  As the court discussed above, Austin failed to show that the prosecutor's question or Melissa's answer resulted in prejudice.  If the question was not prejudicial, trial counsel's failure to move for a mistrial cannot have constituted a deficient performance, nor could his performance have resulted in prejudice.  Also, because Austin has not shown that the question was prejudicial, he has not shown that a motion for a mistrial would have been granted or otherwise found meritorious.  Because the question and the response it elicited were not prejudicial, there is no support for the assumption that the trial court would have granted a motion for a mistrial.  Because Austin has not made the requisite showing, the court must deny Austin's claim.

1    **III.    Restriction of Cross-Examination**

2           Austin claims that the trial court denied him his right to present a defense under the

3    Confrontation Clause when it refused to allow trial counsel to question M. regarding another

4    source of M.'s sexual knowledge. (Pet. at 37.)

5           The relevant facts are as follows. Trial counsel wanted to question M. about "an

6    incident of sexual conduct involving her friend, A.," conduct which M. had mentioned to the

7    investigating detectives:

8    > Melissa testified that when M. was seven she said A., who is a year older than
    > M., "touched her in her private part." "[M.] and [A.] were playing in the room,
9    > and I had [M.] come out, and she had told me that [A.] had touched her, and so,
    > I told [A.'s mom], and then we talked to our girls, and I think, it was just an
10   > innocent type...." Melissa later noted that the girls "touched each other in their
    > private — in their vagina[,]" and that after the incident, the girls were not allowed to
11   > be alone in a room together. During M.'s testimony, defense counsel asked: "[M.],
    > has your friend, [A.], ever touched you?" The prosecution objected as M. answered,
12   > "I don't know." The court conferred with both counsel in a sidebar and sustained the
    > objection.
13
    > The next court day, defense counsel placed his argument for admissibility on
14   > the record. He stated that he was trying to determine "whether a friend, or
    > other people outside of her mother have influenced [M.] or educated her, so to
15   > speak, on sexual matters, and I felt that was relevant given the fact that her age
    > of 8 years old, and at the time of the incident 7 years old." He further stated: "I
16   > think, that's relevant to understand and know how sophisticated she is in terms
    > of sexual acts as well as what people may do with parts of their body . . . and I
17   > think that the exposure to that type of conduct, whether it's through a friend or
    > otherwise, would be relevant." The prosecutor noted her objection on
18   > relevance and hearsay grounds. The court stated that it had indicated off the
    > record that it "would sustain the objection, but permit the defense to explore
19   > where [M.] learned the terminology such as vagina, 'boobie[,"] things of that
    > nature...." The trial court did not state its grounds for sustaining the objection.
20

21   (Ans., Ex. 6 at 9.) A DVD recording of M.'s interview with a police detective, in which she

22   talks about her conduct with A., was played for the jury. (Id. at 12.)

23          The state appellate court rejected Austin's claim, finding that a cross-examination of

24   M. on this matter would not have had a "significant impact on [Austin's] defense or the

25   jury's impression of M.'s credibility."[1]  "The jury was exposed to the underlying facts

26   through two other sources, including M.'s own words which drew the very link between

27   defendant and A. that defendant wished to stress. It is unlikely that the proposed questioning

28

7

would have resulted in additional information of noticeable benefit to the defense." (Ans., Ex. 6 at 13.)

The Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact. See Coy v. Iowa, 487 U.S. 1012, 1016 (1988). The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. Crawford v. Washington, 541 U.S. 36, 61 (2004). It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. Id. This right may be restricted in certain situations, however. See Maryland v. Craig, 497 U.S. 836, 855 (1990). The Confrontation Clause does not prevent a trial judge from imposing reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Also, while the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee an opportunity for a cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. See Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam).

The Supreme Court has held that the appropriate standard for determining whether a constitutional error of the trial type is harmless on federal habeas corpus review of a state conviction is set forth in Kotteakos v. United States, 328 U.S. 750, 776 (1946). The question is whether the error had a substantial and injurious effect or influence in determining the jury's verdict, rather than whether it was harmless beyond a reasonable doubt. See Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993 ). Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. See id. (citation removed).

Applying these legal principles to the instant matter, the Court concludes that even if the trial court's ruling was in error, Austin has not shown that he suffered prejudice. Austin

sought to cross-examine M. on this matter as part of his defense that M. had received her sexual knowledge from someone other than Austin. Though not explored through cross-examination of M., evidence of M.'s sexual conduct with A. was presented to the jury, both through Melissa's testimony and the videotape of M's police interview. Furthermore, Austin's trial counsel referred to M.'s prior sexual contacts in his closing argument, and was free to explain to the jury how they supported Austin's defense. (Ans., Ex. 2 at 693, 694.) Because this evidence was presented to the jury, and the facts plainly admitted by M. and her mother, the court cannot say that even if the trial court committed a constitutional error that Austin suffered prejudice. Accordingly, the court denies Austin's claim.

## IV.     Sufficiency of the Evidence

Austin claims that the evidence "was insufficient as a matter of law to establish either element of force o[r] duress" to convict him of aggravated sexual assault, Cal. Pen. Code § 269. (Pet. at 47.) More specifically, Austin contends that the evidence was insufficient to show that there was force or duress used that was "substantially different from or substantially in excess of that needed for the lewd act." (Id. at 49.)

The state appellate court rejected this claim, finding that M.'s age, Austin's adult size, his age and position of authority and trust in the family, and Austin's telling M. that she would get into trouble if she spoke of the incident were sufficient evidence a jury could use to find that Austin accomplished the crime by using force and duress to overcome M.'s will. (Ans., Ex. 6 at 20.) As Austin's more specific question, the state appellate court noted that "force plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." (Id. at 15.) The jury does not determine "whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resister her attacker." (Id. (internal citations and quotation marks removed).)

The relevant facts are as follows:

[Austin] was convicted, in count 1, of violating Penal Code section 269, aggravated sexual assault of a child. Section 269 is violated when the

9

> defendant commits certain acts upon a child under the age of 14 and 10 or more years younger than the defendant. (Pen. Code, § 269, subd. (a).)  Among the specified acts is the one charged here, "[o]ral copulation, in violation of [Penal Code] section 288a, when committed by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person." (Pen. Code, § 269, subd. (a)(4).)  During closing argument, the prosecution relied on dual theories of "force" and "duress" to prove forcible oral copulation in violation of section 288a.

(Id. at 13–14.)

Duress in California is defined as a "direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (Id. at 17.)  "Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes . . . Where the defendant is a family member and the victim is young . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim [are] relevant to the existence of duress." (Id.)

A reviewing federal court analyzes a state prisoner's allegations of insufficient evidence under Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, the federal court "determines only whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Id. at 324.

A reviewing federal court should take into consideration all of the evidence presented at trial. LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear on the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

Applying these legal principles to the instant matter, the court concludes that Austin's claim is without merit.  Specifically, the record contains evidence on which a reasonable trier

could have found that Austin accomplished the criminal act by force and duress. As to the question whether force was used, M. testified that on September 26, Austin pulled down M.'s shorts and underwear, positioned her on the bed, kneeled down in front of her, and placed his hands on her and on the bed as he performed the act. From this, a rational trier of fact could see Austin's placement of his hands, and his handling of her as the use of force, which in turn indicates that the act was accomplished against M.'s will. As to the question whether duress was used, a rational trier of fact could see Austin's greater age and physical size, as well as his position of authority and his warning M. that telling anyone of the incident could land M. in trouble, as evidence that Austin psychologically coerced M. in order to accomplish his act. Accordingly, Austin's claim is denied.

## CONCLUSION

The court concludes that the state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts. Accordingly, the petition for writ of habeas corpus is DENIED.

The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: June 4, 2009

MARILYN HALL PATEL
United States District Judge

# NOTES

1. The state appellate court also found that trial counsel failed to use the procedures put forth in California's rules of evidence. (<u>Id.</u> at 11–12.) "[California] Evidence Code section 782 provides a procedure for admitting evidence of the complaining witness's sexual conduct in certain sexual offense prosecutions . . . Section 782, as applied in child molestation cases, is designed to protect victims of molestation from "embarrassing personal disclosures" unless the defense is able to show in advance that the victim's sexual conduct is relevant to the victim's credibility." (<u>Id.</u> at 10.) The state appellate court found that M.'s testimony was relevant, and therefore admissible, under section 782, but because trial counsel failed to follow the appropriate procedures in seeking to admit the evidence, the trial court's decision to disallow cross-examination of M. on this issue was proper.